UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL A. DANNENBERG,

    Plaintiff,

v.                                      Case No. 1:09-cv-811
                                            Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on January 17, 1977 (AR 22).[1] He completed the 8th grade (AR 23). Plaintiff alleged a disability onset date of March 5, 2004 (AR 11). Plaintiff had previous employment as an assembler in an auto factory, assistant manager at a food court vendor, cashier, cook, outside cleaner and shipping and receiving clerk at a factory (AR 137, 148-55). Plaintiff identified his disabling conditions as a brain injury from an auto accident, causing seizures, weakness and emotional problems (AR 136). On December 18, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 9-18). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 5, 2004, the alleged onset date (AR 11). In addition, the ALJ found that plaintiff met the insured status requirements for DIB through June 30, 2009 (AR 11). At step two, the ALJ found that plaintiff suffered from severe impairments of: mood disorder and depression; seizure disorder; and headaches (AR 11). At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 12). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform work at all exertional levels but with the following nonexertional limitations:

> He must avoid all unprotected moving machinery and exposure to unprotected heights. He is capable of performing work involving a one- or two-step tasks, can work in a low-stress job (which is defined as having only occasional decision making required and only occasional changes in the work setting), can have no interaction with the public or co-workers, and can do isolated work with only occasional supervision.

(AR 14). The ALJ also found that plaintiff was unable to perform any of his past relevant work (AR 16).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy at all exertional levels (AR 17). Specifically, plaintiff could perform the following types of representative occupations in Michigan: custodian, medium exertional level (38,000 jobs); custodian, light exertional level (5,000 jobs); dishwasher, medium exertional level

(8,000 jobs); and dishwasher, light exertional level (5,000 jobs) (AR 17-18). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act (AR 18).

### III. ANALYSIS

Plaintiff has raised three issues on appeal:

**A. The hypothetical to the vocational expert omitted undisputed limitations from seizures and headaches.**

Plaintiff contends that the ALJ erred by failing to include seizures in the hypothetical question posed to the vocational expert (VE). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical conditions. "[A] hypothetical question need only

5

reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

Contrary to plaintiff's contention, the ALJ was not required to include the diagnosis of "seizure disorder" in the hypothetical question posed to the VE. *Id.* The hypothetical question took into account the limitations posed by the seizure disorder by assuming that the individual "should avoid all use of moving machinery and all exposure to unprotected heights" (AR 58-59). In reaching this determination, the ALJ observed that plaintiff had varied and extensive daily activities which belied his statements of disabling symptoms:

> He hunts, goes fishing, plays cards and video games, build model cars and trucks from kits, watches television, and listens to music. He regularly socializes and is able to cook, clean his residence, drive, go grocery shopping, fix things as needed, and care for his personal needs (Exhibits 4E, 14E and Testimony).

(AR 16). The ALJ also discussed the effect of the seizure disorder on his daily activities:

> In June 2006 the claimant reported that he had his drivers' license suspended because of seizures (Exhibit 4E). In November 2008 Dr. Wei reported that he had not allowed the claimant to return to driving an automobile because of the unpredictability of his seizures (Exhibit 17F/7). The claimant has acknowledged, however, that he does drive an automobile (Exhibit 14E/3). Because the claimant has experienced seizures when he has not complied with his medication therapy, I determine that he must avoid all unprotected moving machinery and exposure to unprotected heights.

(AR 16).

Plaintiff points out that his treating neurologist, Timothy Wei, M.D., found that plaintiff had three work restrictions arising from the seizure disorder, i.e.,"high climbing, heavy weight-lifting, and operating machinery" (AR 465-66). Dr. Wei testified that plaintiff suffered seizures "once a year at most," but also has "breakthrough seizures" due to missing doses of medication or engaging in alcohol behavior (AR 462). The doctor will not allow plaintiff to return

6

to driving an automobile "because his damage is permanent, and his seizures unpredictable" (AR 463).

With respect to the seizure disorder, the only difference between the limitations in hypothetical question posed to the VE and Dr. Wei's opinion was plaintiff's ability to perform "heavy weight-lifting." Assuming that the ALJ erred by failing to take the heaving lifting restriction into account, this was a harmless error, because none of the 56,000 jobs identified by the VE involved heavy lifting; all of these jobs were at the light or medium exertional level. Thus, even if the Commissioner was ordered to adopt Dr. Wei's opinion on remand, plaintiff's claim would be denied. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Plaintiff also contends that the ALJ's hypothetical question failed to incorporate restrictions due to plaintiff's headaches. Dr. Wei testified that plaintiff's headaches could interfere with "concentration issues" and that plaintiff might not be able to carry out simple tasks if he has a major headache (AR 464). The doctor stated that plaintiff could perform a very low skill and very flexible job, which for the doctor meant that "when he gets headaches, he can take off" (AR 465). The doctor summarized the restrictions as follows:

> And for the headache part, because the headaches can come on anytime and may be severe, may be mild, may be severe enough to really affect his performance, and in this kind of case, he should take off from work. So this is something I cannot predict. If he doesn't have a headache, then he should be able to work for eight hours without any problem, just from [sic] neurological point of view.

(AR 466). Without citing any authority (other than Dr. Wei's testimony, *supra*), plaintiff contends that the hypothetical question should have identified jobs which would permit the worker to take off 30 minutes to three hours to allow a headache to pass. Plaintiff's Brief at 11.

The ALJ concluded that plaintiff's headaches did not create a disabling condition. The ALJ noted that Dr. Wei's office notes from June 2008 reflected that plaintiff got headaches sporadically and that lying down or distracting himself helped the headache to go away (AR 15). In addition, the doctor's notes from October 2008 reveal that plaintiff did not require prescription medication for headache control (AR 15). This medical evidence, coupled with plaintiff's extensive daily activities, did not support plaintiff's claim that he suffered from disabling headaches (AR 15-16). In addition, the evidence of record did not support plaintiff's claim that he can only work at jobs which allow him to take breaks ranging from 30 minutes to three hours.

The ALJ's RFC determination and hypothetical question posed to the VE adequately addressed plaintiff's headaches by restricting him to simple, low-stress, unskilled work with no interaction with the public or co-workers and with only occasional supervision. Accordingly, plaintiff's claims that the ALJ ignored his seizures and headaches should be denied.

**B. Rejection of Dr. Lawrence's opinions violated the treating physician rule.**

Michael Lawrence, Ph. D., is plaintiff's treating psychologist (AR 16). Plaintiff contends that the ALJ did not treat Dr. Lawrence as a treating source. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating a Social Security claimant's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

As an initial matter, the ALJ discussed the inconsistent Global Assessment of Functioning (GAF) scores assigned by Dr. Lawrence. The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). *See generally, Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (per curiam) ("the determination of disability must be made on the basis of the entire

9

record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted). *See also* Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . .does not have a direct correlation to the severity requirements in our mental disorders listings"). Nevertheless, the GAF can provide a psycohologist's subjective snapshot of a person's mental functioning at any given point in time.

Here, the ALJ observed that Dr. Lawrence assigned plaintiff GAF scores ranging from 38 to 64 (AR 16).[2] Plaintiff's GAF score of 38, lies within he 31 to 40 range and indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *DSM-IV-TR* at p. 34. However, plaintiff's GAF score of 64 lies within the 61 to 70 range, which indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* The ALJ observed that the consulting psychologist assigned a GAF score of 52, which was in the mid-range of Dr. Lawrence's assessments (AR 16). This mid-range GAF score lies within the 51 to 60 range, which indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic

---

[2] The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

10

attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV-TR* at p. 34. After considering the GAF scores, plaintiff's observation made to Dr. Lawrence in August 2008 that he was moving out of his mother's house and seeking part-time employment (AR 386),[3] and plaintiff's daily activities, treatment and medical history, the ALJ concluded that plaintiff was able to perform a limited range of sustained work (AR 16).

Next, the ALJ could properly reject Dr. Lawrence's opinion that plaintiff "is always going to have difficulty remaining gainfully employed, working a 40-hour week" (AR 16, 475). Although Dr. Lawrence was a treating psychologist, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

Consistent with the "special technique" required to evaluate mental impairments for adults under 20 C.F.R. § 404.1520a(a)-(e), a non-examining consultant, John Pai, M.D. completed a Psychiatric Review Technique Form (PRTF), in which he concluded that plaintiff suffered from affective disorders (Listing 12.04) and anxiety-related disorders (Listing 12.06), but did not meet the

---

[3] While Dr. Lawrence thought that resuming part-time employment was a very good idea from a mental health standpoint, plaintiff observed that his lawyer "did not believe it was a good idea to return to part time employment"(AR 386).

11

requirements of either Listed impairment (AR 298-311). Dr. Pai also completed a mental Residual Function Capacity (RFC) assessment, which determined that while plaintiff had some moderate limitations, he had the capacity "to meet all basic mental demands for being able to do unskilled work" (AR 312-14). In his sworn statement, Dr. Lawrence gave some opinions regarding plaintiff's functioning (e.g., that plaintiff was "markedly" limited in the ability to sustain extended concentration, getting along with coworkers, interacting with the public, in getting along with employers; and was "moderately to markedly limited" in his ability to maintain attendance and was likely to miss several days of work) (AR 475-76). However, Dr. Lawrence, did not complete either a PRTF or a mental RFC assessment.

In his brief, plaintiff attempts to compare Dr. Lawrence's observations with those made by Dr. Pai in the mental RFC assessment. Some of Dr. Lawrence's findings appear to be those made in Section I ("Summary Conclusions") of the mental RFC assessment form completed by Dr. Pai. This form, the SSA-4734-F4-SUP, is described in the agency's Policy Operations Manual (POMS), § DI 24510.060. The "summary conclusions" in Section I relate to 20 areas of mental functioning. For each area of mental functioning, the agency physician evaluates the claimant as either "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," or "not ratable based on available evidence." *See* POMS § DI 24510.060(B)(2)(c). "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS § DI 24510.060(B)(2)(a) (emphasis in original). The actual RFC appears in a narrative format in Section III of the form. POMS § DI 24510.060(B)(4). While Dr. Lawrence expressed some opinions regarding plaintiff's condition, his opinions did not culminate in an RFC

assessment. Rather, the doctor gave a blanket opinion that plaintiff would have difficulty remaining gainfully employed. The ALJ observed that Dr. Lawrence did not consider all of the factors that must be considered for purposes of evaluating a Social Security claim, including those jobs within plaintiff's residual functional capacity (AR 16). Under these circumstances, the ALJ gave good reasons for discounting Dr. Lawrence's opinion and not giving it controlling or significant weight.

> **C. New and material evidence since the hearing mandates remand for reconsideration in light of same.**

Finally, plaintiff seeks a remand for consideration of new evidence. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam). Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the evidence might have changed the prior proceeding.

The standard in determining whether to remand a claim for the consideration of new evidence is governed by statute. "The court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g)(emphasis added). The ALJ issued his decision denying benefits on February 26, 2009. Plaintiff wants the court to consider developments that occurred before and after the issuance of the decision as follows: in January 2009 plaintiff was living with his cousin which caused stress, was hopeful about getting back together with his son's mother, and was not using alcohol; in February 2009, plaintiff was very depressed, learned he was being evicted, and suffered a grand mal seizure; by March 2009, plaintiff had cashed out his auto accident settlement, gone on a drinking binge, suffered two seizures (which he attributed to drinking, the stress of living with his mother and insufficient sleep), reported daily headaches, and was depressed at losing his Social Security claim; by April 2009, plaintiff was drinking and getting into fights; and by May plaintiff had suffered another seizure. Plaintiff's Brief at p. 15.

Plaintiff contends that the seizure plaintiff suffered in February 2009 would be material, because it was not caused by drinking or the failure to take medicine, and "belies the ALJ's attempt to blame all seizures on such causes." The court disagrees. "In order for the claimant to satisfy this burden as to materiality, he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. As previously discussed, if the ALJ had adopted all of Dr. Wei's restrictions regarding the seizure disorder (which according to the doctor would include the possibility of random ("breakthrough") seizures), then plaintiff would still

14

be deemed not disabled due to his ability to perform some 56,000 jobs. Furthermore, plaintiff has not shown good cause for failing to bring this evidence to the attention of the ALJ. Evidence dated after the ALJ's decision does not automatically satisfy the good cause requirement. Rather, "in order to show good cause the complainant must give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir.1986). Plaintiff has not demonstrated good cause for failing to obtain this evidence prior to the hearing. Based on this record, the new evidence appears to reflect the worsening of plaintiff's condition based upon his living arrangements and the subsequent denial of his claim for DIB and SSI. Accordingly, plaintiff's request for a sentence six remand should be denied.

## IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated: August 10, 2010   /s/ Hugh W. Brenneman, Jr.
　　　　　　　　　　　　　　　　　　　HUGH W. BRENNEMAN, JR.
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).